It is possible on the record made that defendant might be liable, on an alleged express promise to pay that rent, for the entire $187.50, or for the $125 for the month of November (see Walton v. Stafford, 162 N. Y. 558, 57 N. E. 92), or, as seemingly conceded by both sides, if he was liable for such proportion of the November rent as was covered by his occupancy, then for about $95. On no possible theory can the judgment for $62.50 and $12 costs be sustained.

Judgment reversed, and new trial granted, with $30 costs to appellant to abide the event. All concur.

---

(93 Misc. Rep. 575)

## In re TOWN OF BATH.

## In re LOCAL OPTION ELECTION.

(Supreme Court, Special Term, Steuben County. February 3, 1916.)

1. INTOXICATING LIQUORS ⬡⟳33—LOCAL OPTION—SUBMISSION TO VOTERS—PROCEEDINGS.

Liquor Tax Law (Consol. Laws, c. 34) § 13, providing the method for submission to voters of the question of local option, requires the town clerk to post and publish certain notices and prepare ballots. Laws 1911, c. 649, creates boards of elections in the several counties, and section 190 thereof imposes on such boards the duty of executing the laws relating to all elections, except as otherwise provided by law. Laws 1908, c. 492, created the office of commissioners of elections in one county, and section 4 thereof provided that the commissioners should have all the powers imposed by statute on officers of the county, or its subdivisions, with regard to elections. Consol. Laws, c. 17, incorporated Laws 1908, c. 492, in the general election laws. Election Law, § 205, requires the posting of all notices to be done by the board of elections. Section 206 provides that the boards of elections shall have all of the duties of the county clerk in regard to elections. Held, that notices published and posted by the board of elections for a local option election held in conjunction with the general election were a valid publication, and sustained the election.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 40, 41; Dec. Dig. ⬡⟳33.]

2. INTOXICATING LIQUORS ⬡⟳34—LOCAL OPTION ELECTIONS—NOTICES—POWERS OF CLERK.

The exception of Election Law (Consol. Laws, c. 17) § 341, requiring boards of election to provide ballots for all elections except those at town meetings held at other times than general elections, does not apply to town meetings coincident with general elections, so that ballots furnished by the board for a local option election held with a general election are valid.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. ⬡⟳34.]

3. INTOXICATING LIQUORS ⬡⟳33—LOCAL OPTION ELECTIONS—CONDUCT—NOTICES—IRREGULARITIES.

Where notices of a local option election were published and posted in proper form, without objection that they issued from the board of election, when they should have issued from the town clerk, and the election was held openly, was free from fraud or deceit, and resulted in ascertainment of the popular and majority will, the election should not be declared

invalid because of the irregularity in procedure, there being substantial compliance with the statutes.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 40, 41; Dec. Dig. ☞33.]

Application for a resubmission to the electors of the town of Bath of the question of local option under the Liquor Tax Law. Application denied.

R. R. & W. K. Lyon, of Bath, for petitioners.

CLARK, J. In the fall of 1915 a petition was filed with the town clerk of the town of Bath, asking to have the local option questions under section 13 of the Liquor Tax Law submitted to the voters of that town, and the town clerk filed with the county clerk and commissioners of elections certified copies of said petition, and posted and published notices of such submission, as required by law. The commissioners of elections of Steuben county also published notices of the submission of said propositions, and caused them to be posted as required by law, and the ballots for voting said propositions were furnished by the commissioners of elections. It will thus be seen that everything had been done to properly bring the questions of local option in the town of Bath before the voters, as required by law, twice—by the commissioners of elections of Steuben county, and also by the town clerk of the town of Bath.

In order to avoid confusion, on the 25th day of October, 1915, a peremptory writ of mandamus was procured out of and under the seal of the Supreme Court, commanding the town clerk to suspend further proceedings with reference to the submission of the local option propositions under the Liquor Tax Law, and the election was had under the direction of the commissioners of elections, and ballots furnished by them were used. This was done without question or protest from anybody, and no appeal was ever taken from said order. The propositions submitted were voted down, the town went dry, and now four petitioners ask for a resubmission of said propositions at a special town meeting on the alleged ground that the election was null and void, because the posting and publishing of notices and furnishing of ballots was done under the direction of the commissioners of elections, instead of the town clerk.

[1] No question is raised but that the notices as required by section 13 of the Liquor Tax Law were published and posted, and that the ballots therein referred to were furnished, and that a full, fair, and honest expression of the voters of the town of Bath was had when these propositions were voted on at the last general election in said town. The only objection urged, and the only reason assigned, for a new election, is that the notices were published and ballots furnished by the wrong party.

Several cases have been cited by counsel for petitioners, but in not one instance, so far as I have been able to discover, was any notice at all given, as required by section 13 of the Liquor Tax Law, of the purpose to submit local option questions to the voters. The Liquor Tax Law was passed nearly 20 years ago, and the object and purpose of the

local option section (section 13) was "the right of the electors of the town to determine whether liquor should be sold within its boundaries." At that time there were no commissioners of elections, and the town clerks of the several towns were charged with the duty of giving the notices required by section 13 of the Liquor Tax Law. It remained in that situation until 1908, when by act of the Legislature (Laws of 1908, c. 492) the office of commissioners of elections in the county of Onondaga was created, and by section 4 of that act it was provided:

"The commissioners shall have and exercise all of the jurisdiction, power and authority conferred and be subject to all the duties and obligations imposed by statute upon all officers of the county and its political subdivisions with respect to general, special and primary elections, and submission of questions or propositions * * * within such county and its political subdivisions."

Under this act the powers and duties previously imposed upon the town clerk in the county of Onondaga were transferred to the commissioners of elections of that county. Later, and in 1909 (Laws of 1909, c. 22), this act was made a part of the Election Law of the state. Subsequently, and in 1911, the Election Law of the state was amended, and in each county in the state there was created a board of elections, to be known as commissioners of elections. A careful reading of chapter 649 of the Laws of 1911 shows clearly a legislative intent to vest in the boards of elections of the several counties all powers and functions relating to elections in their respective counties, and by section 190 of said Election Law, as amended in 1911, it was provided:

"Each of * * * said boards of election shall be and is hereby charged with the duty of executing the laws relating to all elections * * * within their respective cities or counties, except as otherwise provided by law."

By section 205 of the Election Law it is provided that all notices of election, which are required by law to be published, advertised, or posted in any county or political subdivision thereof, shall be published, advertised, or posted by the board of elections; and by section 202 of the Election Law (Laws of 1911, c. 649), the boards of elections were made custodians of the primary records of each political subdivision for which the boards were appointed; and by section 206 it is provided that:

"The said board of elections in any such county shall be charged with the duty of performing each, every and all of the duties which now devolve upon the county clerk or commissioners of elections of said county, relating to elections, excepting that the county clerk of each county shall continue to be the secretary of the board of county canvassers."

It will thus be seen that there was a plain legislative intent, when the Election Law was amended, creating boards of elections in each county, to transfer to such boards the management and control of elections in their respective counties and all political subdivisions thereof, and that would include the submission of all propositions which were to be voted on at the general election.

[2] It is urged that section 341 of the Election Law makes it the duty of the town clerk to post the notices and furnish ballots in cases of this character; but I think the exception referred to in that section

relates to town meetings held at a different time than with the general election, and reading the section as a whole it means that this duty should devolve upon the town clerk when the town meetings are held at a different time than with the general election. It does not conflict with the general purpose of the statute to have the commissioners of elections in the various counties have full charge thereof, including publishing and posting of notices with reference to the submission of town propositions, *when these propositions are to be submitted to the electors at the time of a general election, which was done in the case at bar;* for section 341 of the Election Law provides that:

"The board of elections in each county * * * shall provide the requisite number of official and sample ballots * * * for each election district in each county for each election to be held thereat, except that when town meetings * * * are *not* held at the same time as a general election, the clerk of such town, * * * shall provide * * * ballots and stationery for such election or town meeting."

[3] In our scheme of government the majority should rule, and if the choice of the voters on any proposition submitted has been ascertained, and that result has been fairly and honestly accomplished, with no trickery or fraud or deception, the voice of the majority of the electors, thus honestly ascertained, should not be thwarted because of an irregularity in procedure which does not go to the substance of the controversy.

It is not claimed in this case but that the proper notices, as required by section 13 of the Election Law, were printed, published, and posted as required by that law, and ballots furnished as required; the only possible ground for asking that this election be set at naught being that this work was done by the election commissioners of the county instead of the town clerk. It is not claimed that the vote on the various propositions was not large, or that the majorities were not substantial and representative.

If no notice of the submission of these propositions had been given, a very different question would have arisen; but here ft. notice was given that these propositions were to be submitted, and the notice was that which the law required, and to say that the expressed will of a majority of the electors of the town of Bath shall be set at naught simply because the notices were given and ballots furnished by the election commissioners, instead of the town clerk, is splitting hairs over an important right belonging to citizens who expressed their wishes at the polls.

In this case the ballots were cast, the result of the election declared, and everything about the election was done with the full knowledge on the part of everybody as to who published the notices and furnished the ballots, because the matter had been before the court some days prior to the election, and there was never a word of protest by anybody as to the regularity of the procedure, and now, after the wish of the people of Bath has been honestly ascertained, it should not be set aside on a technicality which in no way can be said to go to the substance of the controversy.

A case very similar to this arose in Onondaga county in 1914, which was passed upon by the Appellate Division of this Department. The

facts in that case are much nearer the facts in the case at bar than any case that has been cited by counsel, and it is the single and sufficient authority for holding that the powers of town clerks with reference to publishing notices as to the submission of local option questions under the Liquor Tax Law have been taken away from them and are vested in the boards of elections of the various counties. Matter of Town of Onondaga, 163 App. Div. 191, 148 N. Y. Supp. 36.

Even though publishing of the notices of election and furnishing of ballots was done under the direction of the commissioners of elections of Steuben county, instead of the clerk of the town of Bath, the notices required by law were given, there was a substantial compliance with the terms of the statute, and no fraud or deceit having entered into this matter in the slightest degree, the will of the electors as expressed at the polls should be upheld.

This application must be denied. Ordered accordingly.